# EXHIBIT 7

**FDA U.S. FOOD & DRUG** ADMINISTRATION

EXHIBIT 7

# Regulatory Procedures Manual

## Chapter 4: ADVISORY ACTIONS

This chapter defines and establishes uniform guidance and procedures for Warning Letters and Untitled Letters

This chapter includes the following sections:

| Section | Topic | Page |
|---|---|---|

4-1    WARNING LETTERS ................................................................. 3

4-1-1.  Warning Letter Procedures ................................................ 3

4-1-2.  Warning Letters to Government Agencies .............................. 5

4-1-3.  Issuing Warning Letters - Factors to Consider ....................... 5

  1.    General Considerations ................................................ 6

  2.    Ongoing or Promised Corrective Actions ......................... 6

  3.    Completed Corrective Actions....................................... 7

  4.    Response Letter.......................................................... 7

  5.    Verification of Corrective Actions .................................. 8

4-1-4.  Center Concurrence and Letters Issued by Centers .............. 8

  1.    All Centers ................................................................ 8

  2.    Center for Drug Evaluation and Research (CDER)............. 8

  3.    Center for Biologics Evaluation and Research (CBER)........ 9

  4.    Center for Devices and Radiological Health (CDRH) ......... 10

  5.    Center for Veterinary Medicine (CVM) ........................... 11

  6.    Center for Food Safety and Applied Nutrition (CFSAN) ..... 12

  7.    Center for Tobacco Products ....................................... 12

4-1-5.  Letters for Illegal Promotional Activities .......................... 13

4-1-6.  Multiple Center Review ................................................ 13

4-1-7.  Time Frames............................................................. 14

Regulatory Procedures Manual        July 2024        Chapter 4 Advisory Actions

4-1-8.    Warning Letter Follow-Up ............................................................... 15

  1.    Acknowledgment of Response to a Warning Letter ............................ 15

  2.    Warning Letter Close-Out Letter ........................................................ 16

  3.    Requests to Post Response on Internet............................................... 17

  4.    Follow-Up Enforcement.................................................................... 18

  5.    Inspection Classification.................................................................... 18

4-1-9.    Firm Profile Updates in eNSpect ...................................................... 19

4-1-10.    Warning Letter Format............................................................... 19

4-1-11.    Warning Letter Distribution .......................................................... 22

4-1-12.    Warning and Untitled Letters Addressed to Importers, Customs Brokers, and Foreign Firms ..................................................................... 22

4-1-13.    Freedom of Information (FOI) ....................................................... 24

4-1-14.    Center for Biologics Evaluation and Research (CBER) .................... 25

4-1-15.    Center for Drug Evaluation and Research (CDER).......................... 27

4-1-16.    Center for Devices and Radiological Health (CDRH)....................... 32

4-1-17.    Center for Food Safety and Applied Nutrition (CFSAN) and Center for Veterinary Medicine (CVM)................................................................... 35

4-1-18.    Center for Tobacco Products (CTP) Retailer Compliance Check Inspection Program...................................................................................... 35

4-1-19.    Tracking ...................................................................................... 36

4-2    UNTITLED LETTERS....................................................................... 37

4-2-1.    Format and Content ...................................................................... 37

4-2-2.    Center Concurrence and Letters Issued By Centers.......................... 37

4-2-3.    Tracking ...................................................................................... 38

4-3    USE OF STATE EVIDENCE FOR FDA WARNING LETTERS AND UNTITLED LETTERS.................................................................................... 38

4-4    EXHIBITS ....................................................................................... 39

  Exhibit 4-1 Procedures for Clearing FDA Warning Letters and Untitled Letters .............................................................................................. 40

  Exhibit 4-2 Warning Letter Close-Out Letter................................................. 63

## 4-1  WARNING LETTERS

### 4-1-1.        Warning Letter Procedures

When it is consistent with the public protection responsibilities of the agency and depending on the nature of the violation, it is the Food and Drug Administration's (FDA's) practice to give individuals and firms an opportunity to take voluntary and prompt corrective action before it initiates an enforcement action. Warning Letters are issued to achieve voluntary compliance and to establish prior notice. (Prior notice is discussed in Chapter 10 - Other Procedures.) The use of Warning Letters and prior notice are based on the expectation that most individuals and firms will voluntarily comply with the law.

The agency position is that Warning Letters are issued only for violations of regulatory significance. Significant violations are those violations that may lead to enforcement action if not promptly and adequately corrected. A Warning Letter is the agency's principal means of achieving prompt voluntary compliance with the Federal Food, Drug, and Cosmetic Act (the Act).

The Warning Letter was developed to correct violations of the statutes or regulations. Also available to the agency are enforcement strategies which are based on the particular set of circumstances at hand and may include sequential or concurrent FDA enforcement actions such as recall, seizure, injunction, administrative detention, civil money penalties and/or prosecution to achieve correction. Despite the significance of the violations, there are some circumstances that may preclude the agency from taking any further enforcement action following the issuance of a Warning Letter. For example, the violation may be serious enough to warrant a Warning Letter and subsequent seizure; however, if the seizable quantity fails to meet the agency's threshold value for seizures, the agency may choose not to pursue a seizure. In this instance, the Warning Letter would document prior warning if adequate corrections are not made and if enforcement action is warranted at a later time.

Responsible officials in positions of authority in regulated firms have a legal duty to implement whatever measures are necessary to ensure that their products, practices, processes, or other activities comply with the law. Under the law such individuals are presumed to be fully aware of their responsibilities. Consequently, responsible individuals should not assume that they would receive a Warning Letter, or other prior notice, before FDA initiates enforcement action.

FDA is under no legal obligation to warn individuals or firms that they or their products are in violation of the law before taking enforcement action, except in a few specifically defined areas. When acting under the authority of Subchapter C - Electronic Product Radiation Control (formerly the Radiation Control for Health and Safety Act of 1968) of Chapter V of the Act, FDA is required by law to provide a written notification to manufacturers when the agency discovers products that fail

to comply with a performance standard or that contain a radiation safety defect. Because of the legal requirements of Subchapter C, minor variations in the procedures may occur.

A Warning Letter is informal and advisory. It communicates the agency's position on a matter, but it does not commit FDA to taking enforcement action. For these reasons, FDA does not consider Warning Letters to be final agency action on which it can be sued.

There are instances when issuing a Warning Letter is not appropriate, and, as previously stated, a Warning Letter is not a prerequisite to taking enforcement action. Examples of situations where the agency will take enforcement action without necessarily issuing a Warning Letter include:

1. The violation reflects a history of repeated or continual conduct of a similar or substantially similar nature during which time the individual and/or firm has been notified of a similar or substantially similar violation;

2. The violation is intentional or flagrant;

3. The violation presents a reasonable possibility of injury or death;

4. The violations, under Title 18 U.S.C. 1001, are intentional and willful acts that once having occurred cannot be retracted. Also, such a felony violation does not require prior notice. Therefore, Title 18 U.S.C. 1001 violations are not suitable for inclusion in Warning Letters; and,

5. When adequate notice has been given by other means and the violations have not been corrected, or are continuing.

See Chapter 10 - Other Procedures, Prior Notice, for other methods of establishing prior notice.

In certain situations, the agency may also take other actions as an alternative to, or concurrently with, the issuance of a Warning Letter. For example:

1. The product is adulterated under Section 402(a)(3) or 402(a)(4) of the Act;

2. There is a violation of current good manufacturing practices (CGMP);

3. The product contains illegal pesticide residues; or

4. The product shows short contents, subpotency, or superpotency.

Additional instructions for Warning Letters in specific product areas are found in compliance program guidance and in compliance policy guides.

Also, see Exhibit 4-1, the agency's "Procedures for Clearing FDA Warning Letters and Untitled Letters." All agency components responsible for issuing Warning Letters and Untitled Letters must follow these procedures. Developed to facilitate review of all Warning Letters and Untitled Letters by the Office of Chief Counsel

2. Updating Firm Profile Status in eNSpect

When a violation letter is the result of a CGMP or QS inspection of a domestic or foreign drug, biologics, or medical device facility, the firm's profile status information in eNSpect is to be appropriately updated at each stage in the review process. The action office (i.e., the program office or center initiating the recommendation) is responsible for entering the status of the violation letter into eNSpect. (See "Firm Profile Updates in eNSpect" in this chapter and Exhibit 4-1 for more information.)"

# 4-2  UNTITLED LETTERS

## 4-2-1.      Format and Content

An Untitled Letter cites violations that do not meet the threshold for significance of regulatory significance for a Warning Letter. Therefore, the format and content of an Untitled Letter should clearly distinguish it from a Warning Letter. For example:

1. The letter is not titled.

2. The letter does not include a statement that FDA will advise other federal agencies of the issuance of the letter so that they may take this information into account when considering the awarding of contracts.

3. The letter does not include a warning statement that failure to take prompt correction may result in enforcement action.

4. The letter does not evoke a mandated follow-up.

5. The letter requests (rather than requires) a written response from the firm within a reasonable amount of time (e.g., "Please respond within 30 days"), unless more specific instructions are provided in a relevant Compliance Program.

Any appropriate agency compliance official may issue an Untitled Letter.

Also, see Exhibit 4-1, the agency's "Procedures for Clearing FDA Warning Letters and Untitled Letters." All agency components responsible for issuing Warning Letters and Untitled Letters must follow these procedures.

## 4-2-2.      Center Concurrence and Letters Issued By Centers

Center concurrence is required prior to issuing Untitled Letters unless direct reference has been granted.

Also, see Exhibit 4-1, the agency's "Procedures for Clearing FDA Warning Letters and Untitled Letters." All agency components responsible for issuing Warning Letters and Untitled Letters must follow these procedures.

### 4-2-3.    Tracking

1. Identification Of Untitled Letters

   All Untitled Letters must be entered into CMS; whether they are generated by a program office or center, and whether they are approved and issued or not. Every Untitled Letter that is issued should bear the CMS-assigned number or a sequential code number assigned by the issuing program office or center. If a program office or center assigned number is used, this number should be recorded in CMS to facilitate tracking.

2. Updating Firm Profile Status in eNSpect

   When a profilable firm (i.e., domestic or foreign drug, biologics, or medical device facility) undergoes a CGMP or QS inspection, the inspected profile classes should be updated by the action office at each stage in the review process. When an Untitled Letter is issued as a result of the inspection, the date and type of letter issued should be entered in the Remarks field for the relevant profile classes. For profile procedures, see IOM Exhibit 5-14 or the [Government-Wide Quality Assurance Program (GWQAP) intranet page](#).

## 4-3    USE OF STATE EVIDENCE FOR FDA WARNING LETTERS AND UNTITLED LETTERS

Evidence obtained by state personnel may be sufficient to support the issuance of Warning Letters and Untitled Letters if the standards and criteria used by state personnel provide reliable support for regulatory actions the agency may take consistent with the agency's guidance on regulatory actions and laboratory procedures.

1. If state evidence involves inspectional observations made solely by state personnel, factors that indicate that the standards and criteria used are reliable for these purposes include, but are not limited to, the following:

   a. The state inspector made the inspectional observations during an inspection conducted pursuant to an agency contract inspection program or a joint inspection program in which FDA participates; or

   b. The state inspector made the inspectional observations after receiving training in relevant law and any specific requirements applicable to the inspection and the establishment or commodity being inspected; or

   c. The state inspector received an "acceptable" rating if audited by a qualified FDA or state auditor under [FMD 76, "State Contracts – Evaluation of Inspectional Performance"](#) (or other applicable audit program); or