# EXHIBIT 10

<div style="border:1px solid black; text-align:center">

**EXHIBIT
10**

</div>

**WARNING LETTER**

# Viatris, Inc.

**MARCS-CMS 690897 — DECEMBER 19, 2024**

> ⊖ More Warning Letters (/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters)

**Delivery Method:**

Via Email

**Reference #:**

320-25-28

**Product:**

Drugs

**Recipient:**

Mr. Scott A. Smith

Chief Executive Officer

Viatris, Inc.

1000 Mylan Blvd.
Canonsburg, PA 15317
United States

**Issuing Office:**

Center for Drug Evaluation and Research (CDER)

United States

**Warning Letter** 320-25-28

December 19, 2024

Dear Mr. Smith:

The U.S. Food and Drug Administration (FDA) inspected your drug manufacturing facility, Mylan Laboratories Limited, Inc., "a Viatris company," FEI 3010453141, located at Plot No. 11, 12 & 13, Indore SEZ Pharma Zone, Phase-II, Sector-III, Pithampur, Dhar, Madhya Pradesh, India, from June 14 to 26, 2024.

This warning letter summarizes significant violations of Current Good Manufacturing Practice (CGMP) regulations for finished pharmaceuticals. See Title 21 Code of Federal Regulations (CFR), parts 210 and 211 (21 CFR parts 210 and 211).

Because your methods, facilities, or controls for manufacturing, processing, packing, or holding do not conform to CGMP, your drug products are adulterated within the meaning of section 501(a)(2)(B) of the Federal Food, Drug, and Cosmetic Act (FD&C Act), 21 U.S.C. 351(a)(2)(B).

We reviewed your July 18, 2024, response to our Form FDA 483 in detail and acknowledge receipt of your subsequent correspondence.

During our inspection, our investigators observed specific violations including, but not limited to, the following.

**1. Your firm failed to establish adequate written responsibilities and procedures applicable to the quality control unit and to follow written procedures applicable to the quality control unit (21 CFR 211.22(d)).**

You failed to ensure the reliability and integrity of quality control data during component release testing at your facility. Our investigators identified anomalies in four worksheets that reported passing results for **(b)(4)** identification testing by chemical analysis.

Biometric access records documented that the responsible analysts were not physically present at the facility during testing. Despite their absence, they documented both the testing process and results as if they had conducted the analyses.

Data integrity is critical throughout the CGMP data life cycle, including in the creation, modification, processing, maintenance, archival, retrieval, transmission, and disposition of data after the record's retention period ends.

In your response, you "…confirmed that certain test data generated in the Packaging Material Laboratory were not reliable…" and "…determined that attendance records did not support that the analyst was present to complete the testing for which they signed." You commit to implement a Data Integrity Remediation Plan, which includes appointing a Data Integrity Lead to oversee and enhance compliance efforts.

We acknowledge that you suspended testing in the Packaging Material Laboratory, and initiated reserve sample testing for components. We also acknowledge that after the inspection, you expanded your investigations, which identified that the facility's Site Head of Quality, Head of Quality Control, Head of Quality Assurance, Head of Investigations, and the Manager responsible for the packaging materials laboratory had violated your data integrity policies and were removed from your organization.

Your response is inadequate. It fails to provide sufficient details regarding the extent of the identified data integrity issues, and the thoroughness of your proposed corrective and preventive actions (CAPAs) is unclear.

In subsequent communications following the inspection, you disclosed that both your site and global quality organization became aware of the data integrity issues related to component testing in January 2024. FDA is concerned that you did not adequately investigate or begin to implement holistic corrective actions until after the subsequent FDA inspection.

In response to this letter, provide:

• A complete assessment of documentation systems used throughout your manufacturing and laboratory operations to determine where documentation practices are insufficient. Include a detailed CAPA plan that comprehensively remediates your firm's documentation practices to ensure you retain attributable, legible, complete, original, accurate, and contemporaneous records throughout your operation.

• A comprehensive investigation into the extent of the inaccuracies in data records and reporting, including results of the data review for drugs distributed to the United States. Include a detailed description of the scope and root causes of your data integrity lapses.

• A current risk assessment of the potential effects of the observed failures on the quality of your drugs. Your assessment should include analyses of the risks to patients caused by the release of drugs affected by a lapse of data integrity and analyses of the risks posed by ongoing operations.

• A management strategy for your firm that includes the details of your global CAPA plan. The detailed corrective action plan should describe how you intend to ensure the reliability and completeness of all data generated by your firm including microbiological and analytical data, manufacturing records, and all data submitted to FDA.

**2. Your firm failed to thoroughly investigate any unexplained discrepancy or failure of a batch or any of its components to meet any of its specifications, whether or not the batch has already been distributed (21 CFR 211.192).**

Your investigations into discrepancies and out-of-specification (OOS) results lacked adequate scientific rationale to support root cause determinations. Specifically,

A. **(b)(4)** mg tablets, batches **(b)(4)** and **(b)(4)**, exhibited OOS and out-of-trend (OOT) results during the dissolution test by high-performance liquid chromatography (HPLC) at the 18-month and 3-month long-term stability timepoints, respectively. The analyst, after consulting their supervisor, aborted the HPLC sample set sequence without providing adequate justification. You also lacked evidence to substantiate the root cause of improper **(b)(4)** of **(b)(4)**.

B. You invalidated OOT assay results and during retest subsequently dismissed an anomalous content uniformity result for **(b)(4)** mg Capsules, batch **(b)(4)**, attributing the original issue to HPLC column leakage. However, the equipment's audit trail did not document such an error, and you conducted retesting using different samples and equipment.

In your response, you acknowledge your inadequate laboratory investigations and data handling practices. Additionally, you commit to perform an extended evaluation across the rest of the laboratory to evaluate your laboratory practices and controls.

Your response is inadequate. The conclusions of your OOS investigations lack the necessary rigor and scope to thoroughly identify root causes, assess the extent of deviations, and evaluate their impact on drug products. You repeatedly accepted these conclusions, despite insufficient justification.

For more information about handling failing, out-of-specification, out-of-trend, or other unexpected results and documentation of your investigations, see FDA's current guidance document *Investigating Out-of-Specification (OOS) Test Results for Pharmaceutical Production* at https://www.fda.gov/media/158416/download. (https://www.fda.gov/media/158416/download.)

In response to this letter, provide:

• A retrospective, independent review of all invalidated OOS (including in-process and release/stability testing) results for U.S. products for the last 3 years from the initial date of inspection and a report summarizing the findings of the analysis, including the following for each OOS:
  o Determine whether the scientific justification and evidence relating to the invalidated OOS result conclusively or inconclusively demonstrates causative laboratory error.
  o For investigations that conclusively establish laboratory root cause, provide rationale, and ensure that all other laboratory methods vulnerable to the same or similar root cause are identified for remediation.
  o For all OOS results found by the retrospective review to have an inconclusive or no root cause identified in the laboratory, include a thorough review of production (e.g., batch manufacturing records, adequacy of the manufacturing steps, suitability of equipment/facilities, variability of raw materials, process capability, deviation history, complaint history, batch failure history). Provide a summary of potential manufacturing root causes for each investigation, and any manufacturing operation improvements.

• A comprehensive review and remediation plan for your OOS result investigation systems. The CAPA should include, but not be limited to, addressing the following:

  o Quality unit (QU) oversight of laboratory investigations.

  o Identification of adverse laboratory control trends.

  o Resolution of causes of laboratory variation.

  o Initiation of thorough investigations of potential manufacturing causes whenever a laboratory cause cannot be conclusively identified.

  o Adequately scoping of each investigation and its CAPA.

  o Revised OOS investigation procedures with these and other remediations.

• A comprehensive, independent assessment of your overall system for investigating deviations, discrepancies, complaints, OOS results, and failures. Provide a detailed action plan to remediate this system. Your action plan should include, but not be limited to, significant improvements in investigation competencies, scope determination, root cause evaluation, CAPA effectiveness, QU oversight, and written procedures. Address how your firm will ensure all phases of investigations are appropriately conducted.

• An independent assessment and remediation plan for your CAPA program. Provide a report that evaluates whether the program includes effective root cause analysis, ensures CAPA effectiveness, analyzes investigations trends, improves the CAPA program when needed, implements final QU decisions, and is fully supported by executive management.

• A comprehensive, independent assessment of your laboratory practices, procedures, methods, equipment, documentation, and analyst competencies. Based on this review, provide a detailed plan to remediate and evaluate the effectiveness of your laboratory system.

**Ineffective Quality Systems**

Significant findings in this letter demonstrate that your firm does not operate an effective quality system in accord with CGMP. In addition to the lack of effective management oversight of your laboratory operations, we found your QU is not enabled to exercise proper authority and/or has insufficiently implemented its responsibilities. Executive management should immediately and comprehensively assess your company's global manufacturing operations to ensure that your systems, processes, and products conform to FDA requirements.

**CGMP Consultant Recommendation**

We strongly recommend that your firm engage a consultant qualified as set forth in 21 CFR 211.34 to assist your firm in meeting CGMP requirements. Your use of a consultant does not relieve your firm's obligation to comply with CGMP. Your firm's executive management remains responsible for resolving all deficiencies and systemic flaws to ensure ongoing CGMP compliance.

**Data Integrity Remediation**

Your quality system does not adequately ensure the accuracy and integrity of data to support the safety, effectiveness, and quality of the drugs you manufacture. See FDA's guidance document *Data Integrity and Compliance With Drug CGMP* for guidance on establishing and following CGMP compliant data integrity practices at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/data-integrity-and-compliance-drug-cgmp-questions-and-answers. (https://www.fda.gov/regulatory-information/search-fda-guidance-documents/data-integrity-and-compliance-drug-cgmp-questions-and-answers.)

We acknowledge that you are using a consultant to audit your operation and assist in meeting FDA requirements. In response to this letter, provide:

A. A comprehensive investigation into the extent of the inaccuracies in data records and reporting. Your investigation should include:

• A detailed investigation protocol and methodology; a summary of all laboratories, manufacturing operations, and systems to be covered by the assessment; and a justification for any part of your operation that you propose to exclude.

• Interviews of current and former employees to identify the nature, scope, and root cause of data inaccuracies. We recommend that these interviews be conducted by a qualified third party.

• An assessment of the extent of data integrity deficiencies at your facility. Identify omissions, alterations, deletions, record destruction, non-contemporaneous record completion, and other deficiencies. Describe all parts of your facility's operations in which you discovered data integrity lapses.

• A comprehensive retrospective evaluation of the nature of the testing and manufacturing data integrity deficiencies. We recommend that a qualified third party with specific expertise in the area where potential breaches were identified should evaluate all data integrity lapses.

B. A current risk assessment of the potential effects of the observed failures on the quality of your drugs. Your assessment should include analyses of the risks to patients caused by the release of drugs affected by a lapse of data integrity and analyses of the risks posed by ongoing operations.

C. A management strategy for your firm that includes the details of your global CAPA plan. Your strategy should include these elements:

• A detailed corrective action plan that describes how you intend to ensure the reliability and completeness of all the data you generate including analytical data, manufacturing records, and all data submitted to FDA.

• A comprehensive description of the root causes of your data integrity lapses, including evidence that the scope and depth of the current action plan is commensurate with the findings of the investigation and risk assessment. Indicate whether individuals responsible for data integrity lapses remain able to influence CGMP-related or drug application data at your firm.

• Interim measures describing the actions you have taken or will take to protect patients and to ensure the quality of your drugs, such as notifying your customers, recalling product, conducting additional testing, adding batches to your stability programs to assure stability, drug application actions, and enhanced complaint monitoring.

• Long-term measures describing any remediation efforts and enhancements to procedures, processes, methods, controls, systems, management oversight, and human resources (e.g., training, staffing improvements) designed to ensure the integrity of your company's data.

• A commitment to have a qualified consultant conduct extensive annual audits, for at least 2 years, to assist in evaluating CAPA effectiveness after you have executed your data integrity remediation protocol.

• Inform FDA if you will be hiring a Chief Integrity Officer who is fully empowered to maintain anonymity of employees who report data integrity concerns and with authority to ensure any potential breach is investigated.

• A status report for any of the above activities already underway or completed.

**Quality Assurance Program Audits**

FDA reminds Viatris, Inc. of their responsibility as a matter of CGMP to correct deficiencies found during quality assurance program audits, also referred to as "internal audits" in your correspondence with the FDA.

In response to this letter, conduct a review of all quality assurance program audits and inspections within the last five years at all Viatris, Inc. facilities. Provide written certification that required corrective actions for such audits and inspections have been taken. If, upon your review or the review by any pertinent party working on your behalf, it is determined that actions have not been taken, provide a timeline for completion for all related corrective actions identified in the audits. The certification and/or timeline should be signed by the CEO of Viatris, Inc.

**Conclusion**

The violations cited in this letter are not intended to be an all-inclusive list of violations that exist at your facility. You are responsible for investigating and determining the causes of any violations and for preventing their recurrence or the occurrence of other violations.

If you are considering an action that is likely to lead to a disruption in the supply of drugs produced at your facility, FDA requests that you contact CDER's Drug Shortages Staff immediately, at drugshortages@fda.hhs.gov, so that FDA can work with you on the most effective way to bring your operations into compliance with the law. Contacting the Drug Shortages Staff also allows you to meet any obligations you may have to report discontinuances or interruptions in your drug manufacture under 21 U.S.C. 356C(b). This also allows FDA to consider, as soon as possible, what actions, if any, may be needed to avoid shortages and protect the health of patients who depend on your products.

FDA placed products offered for import into the United States from your firm on Import Alert 66-40 on December 19, 2024.

Correct any violations promptly. FDA may withhold approval of new applications or supplements listing your firm as a drug manufacturer until any violations completely addressed and we confirm your compliance with CGMP. We may re-inspect to verify that you have completed corrective actions to any violations.

Failure to address any violations may also result in the FDA continuing to refuse admission of articles manufactured at Mylan Laboratories Limited, Inc., "a Viatris company," Indore, India, into the United States under section 801(a)(3) of the FD&C Act, 21 U.S.C. 381(a)(3). Articles under this authority that appear to be adulterated may be detained or refused admission, in that the methods and controls used in their manufacture do not appear to conform to CGMP within the meaning of section 501(a)(2)(B) of the FD&C Act, 21 U.S.C. 351(a)(2)(B).

This letter notifies you of our findings and provides you an opportunity to address the above deficiencies. After you receive this letter, respond to this office in writing within 15 working days. Specify what you have done to address any violations and to prevent their recurrence. In response to this letter, you may provide additional information for our consideration as we continue to assess your activities and practices. If you cannot complete corrective actions within 15 working days, state your reasons for delay and your schedule for completion.

Send your electronic reply to CDER-OC-OMQ-Communications@fda.hhs.gov. Identify your response with FEI 3010453141 and ATTN: Joseph Lambert, Pharm.D.

Sincerely,
/S/

Francis Godwin
Director
Office of Manufacturing Quality
Office of Compliance
Center for Drug Evaluation and Research

Was this page helpful? * (required)

| Yes |
| --- |

| No |
| --- |

**Submit**

🇺🇸 An official form of the United States government. Provided by Touchpoints